# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ROBERT PORTER                                                                          PLAINTIFF

v.                                        NO. 4:08CV00637 WRW

THE HARTFORD LIFE AND ACCIDENT                                        DEFENDANT
INSURANCE COMPANY


## ORDER

BACKGROUND.  Plaintiff Robert Porter ("Porter") has filed the pending motion for attorney's fees, costs, and prejudgment interest, see Document 46, a motion opposed by defendant Hartford Life and Accident Insurance Company ("Hartford").  The Court has reviewed the record and finds that the motion should be, and is, granted to the extent set forth in this Order.

The Court will not recite all of the facts found by United States District Judge William R. Wilson, Jr., in entering judgment for Porter.  In order to provide some context, though, the Court will briefly recite some of the facts; they are as follows:

Porter was at one-time a surgeon who participated in a long-term disability plan, a plan now administered by Hartford.  The terms of the plan were initially governed by a 1999 version of the plan, but it was superseded by a 2001 version of the plan.  In March of 2000, he became unable to work as a surgeon and began receiving benefits.

In January of 2002, Porter began working as a financial consultant.  During some of the months between 2003 and 2007, his earnings were such that they should have triggered an off-set provision in the governing plan and reduced the amount of his benefits for those months.  Hartford failed to reduce his benefits, which resulted in overpayments to him.  Hartford eventually discovered its error and notified Porter that his benefits would be terminated and that it would seek to recoup the overpayments.[1]

In July of 2008, Porter commenced this proceeding by filing a complaint pursuant to the Employee Retirement Income Security Act ("ERISA").  In his complaint, he asked, inter alia, that Hartford be barred from recouping the overpayments.  Hartford responded to the complaint, in part, by filing a counterclaim in which Hartford asked that Porter be ordered to repay the overpayments.  It was only after litigation ensued that Porter was provided with a copy of the 2001 version of the plan, the terms of which Hartford believed governed his claim for benefits.  That version of the plan, though, was never a part of the administrative record.

The parties thereafter filed motions for summary judgment.  Judge Wilson granted Porter's motion and denied Hartford's motion.  In doing so, Judge Wilson found that the parties' dispute was governed by the terms of the 1999 version of the plan and that the facts compelled the following result:

---

[1]

It appears that during the subsequent administrative proceedings, Hartford reversed its termination decision and agreed to continue paying benefits to Porter.

I find that Defendant took unreasonably long to determine that it had been overpaying Plaintiff's benefits.  Defendant knew the provisions of the 1999 Version [of the plan], knew that offsets must be calculated based on monthly income, and yet waited until 2008 to ask for monthly pay stubs.  ...

Because: (1) the great lapse in time between when Defendant should have become aware that it overpaid Plaintiff's LTD [i.e., long-term disability] benefits and when Defendant did become aware of that fact; (2) the lapse in time was caused by Defendant's error; (3) based on the record, Plaintiff did not know he was being overpaid and was not at fault that Defendant did not discover its error; and (4) it is reasonable to assume that Plaintiff changed his circumstances based on his belief that LTD payments he received as early as 2003 were his to keep, I find that restitution is not appropriate in this case.  Accordingly, Defendant may not withhold any further disability benefits that are due Plaintiff under the 1999 Version [of the plan], and will reduce LTD benefit payments only if Plaintiff's income from another occupation exceeds 20% of his pre-disability income.  Defendant will return to Plaintiff amounts it withheld to recoup its overpayments.

See Document 44 at 17-18.

ATTORNEY'S FEES AND COSTS.  Porter requests an award of attorney's fees and costs pursuant to 11 U.S.C. 1132(g).  In the motion, he asks that his attorneys be compensated in the following amounts:

> Leon Marks should be awarded fees of $21,325.00 for fees from November 21, 2008, through and including April 29, 2009; and

> Robinson, Staley, Marshall, and Duke, P.A., should be awarded fees and costs from June 12, 2008, through and including April 29, 2009, for the total amount of $55,674.20, consisting of attorney time of $43,440 (consisting of 217.2 hours at $200.00 per hour); $11,370.00 for Law Clerks (consisting of 189.5 hours at $60.00 per hour); $462.00 for paralegal time (consisting of 7.7 hours at $60 per hour); and non-taxable costs of $402.20.

See Document 46 at 2.

Hartford opposes Porter's request for attorney's fees for two reasons.  First, Hartford maintains that Porter is not entitled to fees because he cannot satisfy the factors identified in Lawrence v. Westerhaus, 749 F.3d 494 (8th Cir. 1984).  Second, assuming that he can satisfy those factors, Hartford maintains that the amount of fees he requests is unreasonable.

The parties agree that Porter's entitlement to attorney's fees is governed by Lawrence v. Westerhaus.  In that case, the Court of Appeals provided the following guidance in addressing a request for fees in an ERISA proceeding:

The decision whether to award attorneys' fees under ERISA is discretionary, not mandatory.  [Citation omitted].  In exercising that discretion, a court should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal qeustion [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

See Id. at 495-496.  The foregoing factors are "by no means exclusive or to be mechanically applied."  See Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002).  "Instead, the district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate."  See Id.

The first Lawrence v. Westerhaus factor involves an inquiry into the degree of Hartford's culpability or bad faith.  With regard to that factor, this litigation sprang solely from Hartford's failure to analyze Porter's monthly income in a timely manner. As Judge Wilson found, Hartford knew of the provisions of the long-term disability plan, knew that off-sets must be calculated based on monthly income, but waited until 2008 to ask for monthly pay stubs.  In addition, Hartford was less than forthcoming with regard to the long-term disability plan it believed governed Porter's claim for benefits, specifically, the 2001 version of the plan was never a part of the administrative record.

-5-

The second <u>Lawrence v. Westerhaus</u> factor involves an inquiry into the ability of Hartford to satisfy an award of attorneys' fees.  With regard to that factor, the parties agree that Hartford can satisfy an award of fees.

The third <u>Lawrence v. Westerhaus</u> factor involves an inquiry into whether an award of attorneys' fees against Hartford could deter other persons acting under similar circumstances.  With regard to that factor, an award of fees in this proceeding would hopefully encourage similarly-situated companies to have procedures in place to catch overpayments within a reasonable period of time.  In addition, an award of fees would hopefully encourage similarly-situated companies to share any allegedly applicable long-term disability plans with beneficiaries before litigation ensues.

The fourth <u>Lawrence v. Westerhaus</u> factor involves an inquiry into whether Porter sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself.  With regard to that factor, it is difficult to see how Porter sought to benefit other participants and beneficiaries in the long-term disability plan he was a participant in, or sought to resolve a significant legal question regarding ERISA itself, in commencing the proceeding at bar.  The Court can find nothing in the record to indicate that he was doing anything more than attempting to vindicate his own rights under the plan.  There is certainly nothing wrong with doing so, but it is difficult to see how he was attempting to benefit anyone else in commencing this proceeding.

The fifth <u>Lawrence v. Westerhaus</u> factor involves an inquiry into the relative merits of the parties' positions.  With regard to that factor, it is true, as Hartford maintains, that Porter received overpayments and that the 2001 version of the long-term disability plan authorized Hartford to recoup any overpayment.  Nevertheless, as Judge Wilson found, the 2001 version of the plan did not govern Porter's claims for benefits; his claim was instead governed by the 1999 version of the plan.  Porter was completely without blame for the overpayments, and it was reasonable to assume that he had changed his circumstances based on his belief that the payments he received as early as 2003 were his to keep.  The problem arose when Hartford failed to discover its error and waited an excessively long time to correct the problem caused by the error.

Although there is no presumption that attorney's fees be awarded to a successful litigant in an ERISA proceeding, the Court finds that the <u>Lawrence v. Westerhaus</u> factors support an award of attorney's fees to Porter.  The Court therefore finds that he should be awarded fees.

Having so found, the question becomes how much to award Porter in attorney's fees.  In answering that question, the Court is guided by the factors identified in <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).[2]  They are as follows:

---

[2]

"Once it decides a fee should be awarded, the district court may take into consideration all of the usual factors a court considers when determining the amount of a fee, including the 'results obtained' and the 'novelty and difficulty of the questions.'"  <u>See</u> <u>Martin v. Arkansas Blue Cross and Blue Shield</u>, 299 F.3d at 972 [citing <u>Henlsey v. Echerhart</u>, 461 U.S. at 429-430 n.3].

The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

See Id. at 430 n.3.

Porter maintains that the amount of attorney's fees he seeks is reasonable for the following reasons:

... the record in this case consisted of 1,191 pages and covers a time period from 1998 through and including ... August 20, 2008.  This case is not the typical abuse of discretion ERISA case ... After Plaintiff completed a largely successful appeal of Hartford's termination decision, Hartford changed direction, and turned the file over to a collection agency to pursue collection of the alleged overpayments, which required Plaintiff to file suit.  After the lawsuit was filed, Hartford produced a document it alleged was a 2001 LTD Policy, claiming that it governed this Court's Standard of Review, and gave it a contractual right to recover the overpayment, despite this policy not being in the record, and despite its representatives having provided the 1999 Policy to Plaintiff at least twice, telling him the terms of the 1999 Policy governed the dispute.  This case also involved issues of an alleged overpayment occurring over a 7 year period, and Hartford's efforts to recover that overpayment.  ERISA cases are categorically difficult for plaintiffs to win, and that Plaintiff's counsel was required to overcome a vigorous defense by Hartford.

See Document 47 at 4-5.

In response, Hartford maintains that the amount of attorney's fees Porter seeks is unreasonable for the following reasons:

> ...  Plaintiff's attorneys seek recovery for over 400 hours of work.  This is an extraordinary sum given the limited issues involved in this action.  In contrast, defense counsel devoted fewer than 80 hours to this case ... for a total of less than $30,999 in fees ...  Plaintiff's lawyers spent more hours prior to filing the Complaint than defense counsel spent on the entire defense.

> ...  Hartford agrees that this is not the typical abuse of discretion ERISA case; it is much more straightforward.  This case had nothing to do with whether or not Plaintiff was disabled.  ...  Whether the medical issues were complex or whether the administrative record was lengthy is irrelevant.  Neither were at issue in this litigation ...

> Indeed, little was at issue.  The parties agreed that Plaintiff had been overpaid.  The parties agreed on the amount of the overpayment.  The sole issue was Hartford's right to recover the acknowledged overpayment.  ...

> The excessive fees are at least in part the result of duplication of effort arising from the involvement of two law offices on a straightforward matter involving the recoupment of an overpayment.  A single attorney (with less than two hours by other timekeepers) handled the defense of this matter.  In contrast, Mr. Duke and Mr. Marks appear to have duplicated much effort.  For example, the two met on December 17 to discuss the case and after that the writing of the brief in support of the motion for summary judgment occupied the next month.  From the date of the meeting to the date the brief was filed, Mr. Marks, who appears to have had primary drafting responsibilities, spent 43 hours.  Mr. Duke's firm spent an additional 80 hours during the same time period on researching and drafting and other matters associated with preparing the brief.  Duplication of efforts is evident.

Defendants submits that the time spent by defense counsel demonstrates the reasonable cost of resolving the single issue in this case. In light of the foregoing, Hartford submits that any fees in excess of $30,000 were plainly unreasonable.

See Document 53 at 6-8.

The Court has given much thought to the parties' assertions.  Hartford is correct in at least two respects.  First, by the time Porter commenced this proceeding, or soon thereafter, Hartford had reversed its termination decision.[3]  Thus, the issue in the proceeding did not involve a denial of benefits, which is the typical issue in an ERISA proceeding and requires a full review the administrative record; or the termination of benefits, which also requires a full review of the administrative record.  Instead, the issue was whether Hartford could retain and continue to recoup the overpayments he admittedly received, an issue that requires less scrutiny of the administrative record.

Second, there was undoubtedly a duplication of effort by Porter's attorneys.  Hartford, though, has only cited one example, that being, the period between December 17, 2008–when his two attorneys met–and January 14, 2009–the day on which he filed his motion for summary judgment.  He cited no other examples.  His request for attorney's fees will therefore be reduced for that period.  Without other examples, though, his request will not be reduced further solely for duplication of effort by his attorneys.

---

[3]   Porter maintains that his efforts in reversing the termination decision during the administrative process were largely successful.  It is unclear what he meant by the term "largely."

With regard to the factors identified in <u>Hensley v. Eckerhart</u>, the Court finds that they justify awarding Porter significant attorney's fees.  Although the issue at bar required less scrutiny of the administrative record, and the time limitations imposed by circumstances were not great, the time and labor required in framing and briefing the issue were not insignificant.  The issue was certainly novel and required some expertise in the ERISA field.  The affidavits submitted by Porter in support of his request for attorney's fees establish that the hourly rate requested by his attorneys is not out of the ordinary as his attorneys have experience in the ERISA field and enjoy a favorable reputation in the legal community.  The amount of attorney's fees requested is not inconsistent with the result obtained by him.[4]  Last, there is nothing to suggest that a significant award of attorney's fees would be inconsistent with the fees awarded in other similar cases.

Given the foregoing, the portion of Porter's motion seeking an award of attorney's fees and costs is granted to the following extent.  He is awarded seventy-five percent of the fees he seeks.  Thus, he is awarded fees and costs in the following amounts:

(1) **$15,993.75** for the time spent by attorney Leon Mark ("Mark"), which is seventy-five percent of what Porter requested for Mark's time; and

---

[4] It appears that the overpayments to Porter totaled approximately $331,000.00.  It appears that as of June of 2008, Hartford had withheld approximately $56,000.00 in attempting to recoup the overpayments.  Judge Wilson ordered Hartford to return the withheld portion, <u>i.e.</u>, $56,000.00, and cease all attempts to recoup the balance, or $275,000.00

(2) **$32,580.00** for the time spent by attorneys with the Law Firm of Robinson, Staley, Marshall, and Duke ("Law Firm"), which is seventy-five percent of what Porter requested for their time;

(3) **$8,527.50** for the time spent by law clerks at the Law Firm, which is seventy-five percent of what Porter requested for their time;

(4) **$346.50** for paralegal time at the Law Firm, which is seventy-five percent of what Porter requested for their time; and

(5) **$406.20** in non-taxable costs, which is one hundred percent of what Porter requested in non-taxable costs.

In summary, Porter is awarded fees totaling **$57,447.75** ($15,993.75 for Mark, plus $32,580.00 for the Law Firm, plus $8,527.50 for the law clerks, plus $346.50 for the paralegals) and non-taxable costs in the amount of **$406.20.**

PREJUDGMENT INTEREST.  Porter also seeks an award of prejudgment interest at the applicable federal rate.  See Document 46.  Hartford does not oppose that portion of his motion.[5]  Thus, the portion of his motion seeking an award of prejudgment interest is granted.  The parties shall attempt to agree to an appropriate amount of prejudgment interest.  If they cannot agree, they may petition the Court to make that determination.

---

[5]

    In Hartford's response to Porter's motion for attorney's fees, costs, and prejudgment interest, Hartford represented that it opposed the motion "insofar as [the motion] seeks an award of attorney's fees and costs."  See Document 53 at 1.

IT IS SO ORDERED this ___2___ July, 2009.


_____
UNITED STATES MAGISTRATE JUDGE